SEE, Justice
(concurring specially).
I concur in the main opinion.
The main opinion concludes that Hattie Randall’s conduct in completing the licensing-evaluation forms used by the Mobile County Department of Human Resources falls within the protection of State-agent immunity, citing Ex parte Cranman, 792 So.2d 392 (Ma.2000). The respondents object, with good reason, to the plausibility of some of the answers Randall reported on the licensing-evaluation forms. Justice Murdock notes in his dissent that *667 Randall’s conduct does not readily fit within any of the Cranman categories, but comes closest to fitting into category (3), “discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner.” Cranman, 792 So.2d at 405. He states that, “In general, these statutes and regulations left Randall with significant discretion as to the manner in which she was to examine and investigate the day care and then formulate and record her findings and recommendations.” 971 So.2d at 673.
If it is necessary to squeeze Randall’s conduct into category (3), I would note that we must be careful when considering acts that are either ministerial or discretionary in their fundamental nature that we do not so finely reduce them into ministerial and discretionary components that we effectively abolish State-agent immunity. See Swan v. City of Hueytown, 920 So.2d 1075, 1081 (“Breaking discretionary actions into increasingly minute ministerial components circumvents the intention of Article I, § 14, Ala. Const.1901.” (footnote omitted)). Every task can be minutely disaggregated and inspected piece by piece, requiring the State actor to defend each component action that does not partake of the discretionary — or, as here, the ministerial — nature of the Cranman category under which the general act is immunized.
It is our charge to determine the intent of the Constitution and to apply it as intended. We are charged to do so whether we agree or disagree with the policy embodied in it.[5] The Constitution of Alabama states “[t]hat the state of Alabama shall never be made defendant in any court of law or equity.” Art. 1, § 14, Ala. Const, of 1901. “The wall of ‘governmental immunity’ is 'almost invincible, made so by the people through their Constitution as interpreted by this Court.” Hutchinson v. Board of Trs. of Univ. of Alabama, 288 Ala. 20, 24, 256 So.2d 281, 284 (1971). Moreover, “ ‘[o]ne of the purposes of immunity, absolute or qualified, is to spare a defendant not only unwarranted liability, but unwarranted demands customarily imposed upon those defending a long drawn out lawsuit.’ ” Ryan v. Hayes, 831 So.2d 21, 31 (Ala.2002) (quoting Siegert v. Gilley, 500 U.S. 226, 232, 111 S.Ct. 1789, 114 L.Ed.2d 277 (1991)). Therefore, I would recognize Randall’s actions in completing the Department licensing-evaluation forms as falling within Cranman category (3), “discharging duties imposed on a department or agency by statute, rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner,” notwithstanding that she was required to exercise some discretion in how to fill out the forms, in how deeply to dig for the information needed to complete the forms, and in what answers to accept at face value or to reject as too improbable. It is not necessary, however, to labor this point.
The main opinion reminds us that it was the intention of this Court, in Cranman, to “restate the rule governing State-agent *668 immunity.” 792 So.2d at 405. Based on the prior caselaw, Cranman enumerated five categories of conduct in which a State agent is “immune from civil liability in his or her personal capacity.”[6] The main opinion relies on the Cranman restatement to support its holding that Randall is immune from suit. Although I originally dissented in Cranman,[7] I have since concurred. Ex parte Mobile County Dep’t of Human Res., 815 So.2d 527, 532 (See, J., concurring specially) (“Although I disagreed with the discretionary-immunity rule suggested by the plurality in Ex parte Cranman, 792 So.2d 392, 413-17 (Ala.2000) (See, J., dissenting opinion), and subsequently adopted by this Court in Ex parte Butts, 775 So.2d 173, at 177-78 (Ala.2000), it is now the law of the State of Alabama. I therefore concur.”). The main opinion states that the Cranman categories are not exhaustive, citing Howard v. City of Atmore, 887 So.2d 201, 206 (Ala.2003) (“On its face, Cranman disclaims the rigidity, or exclusivity, attributed to it by Howard. In other words, Cranman states categories, but does not purport to set forth an exhaustive list of activities falling within each category.”). Indeed, Cranman itself recognizes that it is not intended to change the law, but to restate it. Cranman, 792 So.2d at 405 (“We therefore restate the rule governing State-agent immunity.”).[8] I believe that the result in this case is consistent with the Alabama caselaw interpreting the doctrine of State-agent immu *669 nity. See, e.g., Ex parte Sawyer, 876 So.2d 433 (Ala.2003) (relying on Cranman to issue writ of mandamus dismissing claims against the commissioner of the Department of Mental Health and Mental Retardation in her individual capacity for failing to establish policies that would have prevented an attack on a nursing-home resident by a fellow nursing-home resident); Ex parte Blankenship, 806 So.2d 1186 (Ala.2000) (relying on Cranman to direct the trial court to enter a summary judgment in favor of school principal and band director as to claims against them in their individual capacities in educating students). Therefore, I concur.

. I would argue against including the doctrine of sovereign immunity in our State constitution. If we can expect private actors to live their lives and to carry out their business within the limits of the laws of the State, I do not see why we cannot expect the same of State actors. The State is every bit as capable of insuring itself as are private actors, and the full cost of the acts of the State should be borne by those who receive the benefit of the State action, not by those who have' the misfortune, as here, to be the victims of the State actor’s malfeasance.

.
"(1) formulating plans, policies, or designs; ...
"(2) exercising his or her judgment in the administration of a department or agency of government ...
"(3) discharging duties imposed on a department or agency by statute/ rule, or regulation, insofar as the statute, rule, or regulation prescribes the manner for performing the duties and the State agent performs the duties in that manner; ...
“(4) exercising judgment in the enforcement of the criminal laws of the State, including, but not limited to, law-enforcement officers’ arresting or attempting to arrest persons; [and]
"(5) exercising judgment in the discharge of duties imposed by statute, rule, or regulation in releasing prisoners, counseling or releasing persons of unsound mind, or educating students.”
Cranman, 792 So.2d at 405.

. I wrote in that dissent that I believed the original per curiam opinion in Cranman, which was subsequently withdrawn, correctly restated the rule concerning State-agent immunity in relevant part as follows:
" ‘[A] governmental agent is immune from civil liability where the conduct made the basis of the claim against the agent is based upon the agent's formulation of plans, policies, or designs, or where the agent otherwise makes decisions such as those made in the context of the following activities:
" '(1) making administrative adjudications;
" '(2) allocating resources;
" ‘(3) negotiating contracts;
" '(4) hiring, firing, transferring, assigning, or supervising personnel;
" ‘(5) activities of law-enforcement or correctional officers in arresting, attempting to arrest, or releasing prisoners;
" '(6) all other instances where acts or decisions, including those concerning the safety, health, well-being, fitness, competence, development, or confinement of persons, cannot be challenged without imposing a burden arising from interference with a coequal branch of government that exceeds the benefit of the challenging party’s right to a judicial remedy.’ ”
Cranman, 792 So.2d at 415 (See, J., dissenting). This restatement of the doctrine of State-agent immunity, I believe, reflects that Randall's behavior is covered by the doctrine.

.We are without the power to change the law of sovereign immunity that appears in the Constitution of Alabama, but are bound by it. Ala. Const, of 1901, Art. XVI, § 279 ("all officers, executive and judicial, [are required to] take the following oath or affirmation: 1, _, solemnly swear ... that I will support the Constitution of the United States, and the Constitution of the State of Alabama ... and that I will faithfully and honestly discharge the duties of the office upon which I am about to enter